WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Atlatl Group LLC, et al., | No. CV-20-01199-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| Unknown Parties, et al., | |
| Defendants. | |

Plaintiffs Atlatl Group LLC, dba "Bravada Yachts," Aaron Browning ("Browning"), Robert Gutierrez ("Gutierrez"), and Dominic Barnhill ("Barnhill") and John and Jane Does 1-10 ("Plaintiffs") have filed an Amended Motion for Entry of Default Judgment against Defendant Justin Jarvis ("Defendant")[1] (Doc. 33). The Motion is unopposed, and the time to file a response has passed. *See* LRCiv 7.2(c). For the following reasons, the Court will deny Plaintiffs' Motion without prejudice.

**I.     Background**

Plaintiff Bravada Yachts is an Arizona limited liability company; Browning and Gutierrez are its principals. (Doc. 1 at ¶ 10). Barnhill and John and Jane Does are all current employees. (*Id.*) Defendant Jarvis was a former employee of Bravada Yachts. (*Id.* at ¶¶ 17, 21)

On June 16, 2020, Plaintiffs filed their Complaint against Defendant for the following claims: (1) trademark infringement; (2) common law trademark infringement

---

[1] Although the Complaint is brought against Defendants Justin Jarvis and Jeffrey Does 1-10, Plaintiffs only seek default judgment against Defendant Jarvis. (Doc. 33 at 3).

and unfair competition; (3) false advertising under 15 U.S.C. § 1125(a); (4) commercial disparagement; (5) defamation per se; (6) defamation; (7) breach of contract; (8) assault; (9) battery; and (10) punitive damages. (*Id.* at 6–14). On August 11, 2020, Plaintiffs served Defendant. (Doc. 23-1). Defendant's deadline to answer or defend was September 1, 2020. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). Defendant did not respond or otherwise appear in this action.

On October 16, 2020, Plaintiffs filed an application for entry of default as to Defendant. (Doc. 23). Three days later the Clerk entered default against Defendant. (Doc. 25). On March 31, 2022, Plaintiffs filed an Amended Motion for Default Judgment against Defendant (Doc. 33). Although the Complaint contains ten counts, Plaintiffs' Motion seeks default judgment only on the following claims: (1) trademark infringement; (2) defamation; (3) defamation per se; (4) false advertising; (5) commercial disparagement; (6) breach of contract; and (7) punitive damages. (*Id.* at 3–5). Defendant did not file a Response.

**II.    Default Judgment**

Federal Rule of Civil Procedure 55(b)(2) governs applications for default judgment. Entry of default judgment is within a court's discretion. *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980). Before assessing the merits of a plaintiff's motion for default judgment, the Court must confirm that it has subject-matter jurisdiction over the case and personal jurisdiction over the defendant. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

Once a court finds jurisdiction, it must consider: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and, (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool,* 782 F.2d 1470, 1472 (9th Cir. 1986). Upon entry of default, the factual allegations in a complaint, except those relating to damages, are deemed admitted. *TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917 (9th Cir. 1987).

**III.   Jurisdiction and *Eitel* Analysis**

The Court will first address the question of jurisdiction. The Complaint brings a trademark infringement and false advertising claim. (Doc. 1 ¶ 1). It follows that the Court has federal question jurisdiction. *See* 15 U.S.C. § 1051 *et seq.* The Court also possesses supplemental jurisdiction over Plaintiffs' state law claims for breach of contract, defamation, and punitive damages. *See* 28 U.S.C. § 1367; *Bennett v. Am. Med. Response, Inc.*, 226 F. App'x 725, 727 (9th Cir. 2007). Defendant Jarvis, alleged to be an Arizona resident, is domiciled in this jurisdiction and therefore subject to this Court's personal jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]"). The Court finds it has jurisdiction over the subject matter of this case and its parties, and it will proceed to evaluate the *Eitel* factors to assess the merits of Plaintiffs' Motion for Default Judgment.

### a. Possible Prejudice

Here, the first factor weighs in favor of granting Plaintiffs' Motion because Plaintiffs will be prejudiced if this case remains unresolved. The record reflects that Plaintiffs properly served Defendant. (Doc. 23-1). Defendant never responded. If the Motion is not granted, Plaintiffs "will likely be without other recourse for recovery." *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

### b. Merits of Plaintiffs' Claims and Sufficiency of Complaint

"Under an *Eitel* analysis, the merits of [a] plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010). The second and third *Eitel* factors favor default judgment where the complaint sufficiently states a claim for relief upon which the plaintiffs may recover. *See Danning v. Lavine*, 572 F.2d 1386, 1388–89 (9th Cir. 1978); *Pepsico, Inc.*, 238 F. Supp. 2d at 1175. "Upon entry of default, the facts alleged to establish liability are binding upon the defaulting party." *Danning*, 572 F.2d at 1388. "However, it follows from this that facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the

judgment." *Id*.

        **i.    Trademark Infringement, False Advertising, and Unfair Competition**

A person shall be liable in a civil action by a registrant owner of a mark if that person, without consent, uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). The "test for whether trademark infringement has occurred is identical to the test for whether false designation of origin has occurred." *Adidas Am., Inc. v. Calmese*, 662 F. Supp. 2d 1294, 1298 (D. Or. 2009) (citing *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008)), *aff'd*, 489 F. App'x 177 (9th Cir. 2012). Likewise, "trademark infringement and unfair competition claims brought under the common law and the Lanham Act . . . share the same analysis." *3 Ratones Ciegos v. Mucha Lucha Libre Taco Shop 1 LLC*, 2017 WL 4284570, at *2 (D. Ariz. 2017). The main question under a trademark infringement claim is "whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to who makes what product." *Jada Toys, Inc.*, 518 F.3d at 632 (citation and internal quotation marks omitted).

Plaintiffs' allegations, taken as true, suggest Defendant's use of its trademark likely creates confusion. The Complaint alleges that Plaintiffs are the owners of the trademark and designation "BRAVADA" used in conjunction with luxury houseboats. (Doc. 1 ¶¶ 3–6, 12–15). Defendant Jarvis has created Instagram accounts that bear the BRAVADA Yachts trademark in its usernames. (*Id.* ¶ 26). Defendant's use of the BRAVADA trademark is likely to cause confusion among customers as to the quality of Plaintiffs' goods. (*Id.* ¶¶ 24, 27). The Court therefore concludes that Plaintiffs have sufficiently stated their claims for trademark infringement, false advertising, and unfair competition.

        **ii.    Defamation, Defamation Per Se, and Commercial Disparagement**

A defamation claim requires that a plaintiff show the defendant published a false and defamatory communication and that the defendant "(a) knows that the statement is

false and it defames the other, (b) acts in reckless disregard of these matters, or (c) acts negligently in failing to ascertain them." *Rowland v. Union Hills Country Club*, 757 P.2d 105, 110 (Ariz. Ct. App. 1988) (citation omitted). To be published, a communication must be made to a third party. *Dube v. Likins*, 167 P.3d 93, 104 (Ariz. Ct. App. 2007). Defamation per se is similar under Arizona law, but "is actionable without proof of special damages . . . because it is a communication of such a nature that the court can presume as a matter of law that the communication will tend to degrade or disgrace the party defamed." *McClinton v. Rice*, 265 P.2d 425, 429–30 (Ariz. 1953) (internal citations omitted).

Here, Plaintiff alleges that Defendant published harmful statements to third parties while failing to ascertain their falsehood or truthfulness. (Doc. 1 ¶¶ 24, 27, 38–39). For example, the Complaint alleges Defendant has published statements online that claim Bravada Yachts "is a Ponzi scheme" and "does not use certified welders" when building their commercial boats. (*Id.* ¶ 24). Taken as true, the Court can presume these public statements "will tend to degrade or disgrace" Bravada Yachts. The Court therefore finds that Plaintiff has adequately pled claims for defamation and defamation per se.

A commercial disparagement claim, also referred to as common law trade libel or product disparagement, is similar to defamation. *See Luxury Auto Collection LLC v. Walker*, 2022 WL 17361292, at *5 (D. Ariz. July 6, 2022) (citing *9B Ariz. Prac., Business Law Deskbook* § 33:6 (2022–2023 ed.)). Commercial disparagement "involves the intentional publication of an injurious falsehood disparaging the quality of another's property with resulting pecuniary loss." *Gee v. Pima County*, 612 P.2d 1079, 1079 (Ariz. Ct. App. 1980). "[T]he disparagement in the trade libel goes to the quality of property, rather than title." *Id.*

Speaking to the "quality of property," the Complaint alleges Defendant published statements disparaging the quality of the watercrafts produced by Bravada Yachts. (*See, e.g.*, Doc. 1 ¶ 27 (alleging Defendant publicly stated "Bravada Yachts . . . produces boats that are structurally unsound and have 'crap work hidden all over' them")). Taking Plaintiffs' allegations as true, the Court finds Plaintiffs have adequately pled a claim for

commercial disparagement.

### iii. Breach of Contract

A breach of contract claim under Arizona law requires of three elements: "(1) a contract exists between the plaintiff and the defendant; (2) the defendant breached the contract; and (3) the breach resulted in damage to the plaintiff." *Nerdig v. Elec. Ins. Co.*, 2018 WL 4184926, at *3 (D. Ariz. Aug. 31, 2018) (citing *Frank Lloyd Wright Found. v. Kroeter*, 697 F. Supp. 2d 1118, 1125 (D. Ariz. 2010)). Here, the Complaint alleges that Defendant signed a "Trade Secret Agreement" on October 30, 2017, as part of his employment. (Doc. 1 ¶ 18; *see also* Doc. 1 at 23–28). The Complaint alleges the Trade Secret Agreement prohibited Defendant from (1) disclosing Bravada Yachts' "proprietary information," or (2) interfering with its business relationships for a 12-month period after employment termination. (Doc. 1 ¶ 19–20). The Complaint alleges Defendant breached the Trade Secret Agreement in a variety of ways, (*id.* ¶ 21–27, 36, 38–39), resulting in damage. (*Id.* ¶ 48–49). The Court therefore finds Plaintiffs have adequately pled the elements for a contract claim. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("[T]he factual allegations of the complaint . . . will be taken as true.").

In sum, the Court concludes the second and third *Eitel* factors weigh in favor of entering default judgment. *See Danning*, 572 F.2d at 1388–89. Plaintiffs have sufficiently pled claims regarding: (1) Trademark Infringement; (2) False Advertising; (3) Unfair Competition; (4) Defamation; (5) Defamation Per Se; (6) Commercial Disparagement; and (7) Breach of Contract.

### c. Money at Stake

Regarding the fourth factor, the Court considers the amount of money at stake in relation to the seriousness of Defendant's conduct. *See PepsiCo, Inc*, 238 F. Supp. 2d at 1176. "If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored." *Gemmel v. Systemhouse, Inc.*, 2008 WL 65604, at *4 (D. Ariz. Jan. 3, 2008). "Although 'Rule 55 does not limit the amount of money that can be awarded in a default judgment, . . . courts are ordinarily reluctant to enter a default

judgment when the stakes are high.'" *Mountains of Spices LLC v. Lafrenz*, 2023 WL 1069696, at *8 (D. Ariz. Jan. 27, 2023) (quoting *Hydentra HLP Int. Ltd. v. Porn69.org*, 2016 WL 3213208, at *1 (D. Ariz. June 10, 2016)). "A large sum of money at stake may therefore weigh against entry of default judgment." *Id.* "Nonetheless, where the amount sought is directly proportional to the harm a plaintiff incurred, this factor does not preclude entry of default judgment." *Id.* (citing *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 617 (9th Cir. 2016)).

Here, Plaintiff seeks a substantial amount—at least $3,960,000.00—"due to lost profits, existing clients demanding refunds, and investors refusing to invest" in the company. (Doc. 33 at 6). Plaintiffs further request the Court award punitive damages and attorneys' fees and costs, although Plaintiffs do not provide the Court with specific amounts. (*Id.* at 9). The Court find the fourth *Eitel* factor weighs against entry of default judgment because nearly $4 million is a substantial sum of money and the requested amounts do not amount to a sum certain or have not been specifically requested by Plaintiffs.

### d.     Potential Disputes of Material Fact

There are no disputes of material fact considering that Defendant, who has been served, has not responded to the Motions for Default or Default Judgment, and has failed to defend this matter. The fifth factor therefore supports entry of default judgment.

### e.     Excusable Neglect

Likewise, the sixth factor supports entry of default judgment because there is no evidence that Defendant's default was due to excusable neglect. Rather, the record reflects that Defendant was properly served and provided ample time to answer or defend. (Doc. 23-1). There is no evidence of excusable neglect for Defendant's failure to defend this case. This factor weighs in favor of entering default judgment.

### f.     Policy Favoring Decision on the Merits

As to the final factor, the Court considers the public policy that cases should be tried on the merits whenever possible. *Eitel*, 782 F.2d at 1472. The mere existence of Rule

55(b), however, indicates that this policy is not absolute. *PepsiCo, Inc*, 238 F.Supp.2d. at 1177. Defendant's failure to defend this matter and abide by Court Orders makes a decision on the merits impossible. *See, e.g.*, *Dr. JKL Ltd.*, 749 F. Supp. 2d at 1051 (finding defendants "failure to comply with the judicial process makes a decision on the merits likely impossible"). The Court is mindful of the preference for resolving cases on their merits, but Defendant has not responded here and therefore the Court finds this factor weighs in favor of granting default judgment.

Overall, the Court finds the *Eitel* factors support the conclusion that Plaintiffs have established default judgment is proper as to Defendant's liability regarding the claims.

**IV.     Damages**

Having found that entry of default judgment is proper as to the claims' liability, the Court must now determine Plaintiffs' damages. In the Complaint, Plaintiffs seek injunctive relief, compensatory and punitive damages, and attorneys' fees and costs. (Doc. 1 at 14, 15). Plaintiffs do not specify an amount in the Complaint, but in its Motion for Default Judgment seek compensatory damages amounting to $3,960,000.00, as well as punitive damages and attorneys' fees in amounts to be determined by the Court. (Doc. 33 at 6). Plaintiffs further request the Court to issue permanent injunctions "against Defendant regarding publications and communications about Plaintiffs." (*Id.*)

In contrast to the other allegations in a complaint, allegations pertaining to damages are not automatically taken as true. *TeleVideo Sys., Inc.,* 826 F.2d at 917–18. "The plaintiff is required to provide evidence of its damages, and the damages sought must not be different in kind or amount from those set forth in the complaint." *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011); Fed. R. Civ. P. 54(c). This ensures a defendant may know from the complaint what the potential award may be, and the defendant may then decide whether a response is worthwhile. *See, e.g.*, *Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007) (limiting damages in a default judgment award to what is "specified in the [complaint's] 'demand for judgment' . . . ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing

to suffer judgment in that amount, and then default without the need to hire a lawyer").

The Court finds that the damages in the Complaint do not differ in kind from those in the Motion. The Court must nevertheless decline to enter default judgment on these claims based on the record before it. (Doc. 33 at 9). Plaintiffs state they are requesting default judgment against Defendant Jarvis for Bravada Yachts' claims against him because those the claims that can be established for a sum certain. Indeed, "[a] Court may enter a default judgment without a damages hearing when . . . 'the amount claimed is a liquidated sum or capable of mathematical calculation.'" *Capitol Specialty Ins. Corp. v. Chaldean LLC*, 2022 WL 2953062, at *6 (D. Ariz. July 26, 2022) (quoting *HTS, Inc. v. Boley*, 954 F. Supp. 2d 927, 947 (D. Ariz. 2013)); *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981). But "[w]hen punitive damages are sought by default judgment, the court must have independent evidence to support the award because punitive-damages-worthy conduct alleged in a complaint is not regarded as admitted by default." *Alutiiq Int'l Sols., LLC v. OIC Marianas Ins. Corp.*, 149 F. Supp. 3d 1208, 1215 (D. Nev. 2016) (citing *Matter of Gober*, 100 F.3d 1195, 1205 (5th Cir. 1996) (conduct sufficient to warrant punitive damages is not regarded as admitted by default)).

Plaintiffs' Motion and the attached exhibits do not sufficiently establish the amount of damages suffered due to Defendant's alleged actions. (Docs. 33; 33-1); *see Doe v. United States*, 2018 WL 2431774, at *8 (D. Ariz. May 30, 2018) ("In determining damages, a court can rely on declarations submitted by the plaintiff[.]") (citing *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal 2003)). Because "the amount claimed is [not] a liquidated sum or capable of mathematical calculation," an evidentiary damage hearing to assess the calculation of Plaintiffs' damages must take place. *See Rubicon Glob. Ventures, Inc. v. Chongquing Zongshen Grp. Imp./Exp. Corp.*, 630 F. App'x 655, 658 (9th Cir. 2015) (where a claimant seeks unliquidated damages, defaulted parties are entitled to contest the amount of damages). Accordingly, the Motion will be denied, without prejudice, for failure to sufficiently prove the damages requested. However, the Court will refer the matter to a United States Magistrate Judge to provide Plaintiffs with an

1 opportunity to rectify this deficiency.

2     Accordingly,

3     **IT IS HEREBY ORDERED** that Plaintiffs' Application for Entry of Default Judgment (Doc. 33) is **denied without prejudice** for failure to sufficiently prove their requested damages.

6     **IT IS FURTHER ORDERED** that this matter is referred to United States Magistrate Judge Deborah M. Fine for a Report and Recommendation ("R&R") on Plaintiffs' requested damages. Following the issuance of the R&R, Plaintiff may resubmit their motion for default judgment.

10     Dated this 21st day of March, 2023.

*Honorable Diane J. Humetewa*
United States District Judge